## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

GEORGE T. FARMER, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.

ALTERRA MOUNTAIN COMPANY U.S.
INC. and IKON PASS INC.,

      Defendants.

**Trial by Jury Demanded**

## CLASS ACTION COMPLAINT

Plaintiff George T. Farmer ("Plaintiff"), brings this action against Defendants Alterra Mountain Company U.S. Inc. ("Alterra") and Ikon Pass Inc. ("Ikon") (collectively, "Defendants"), by and through his attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

## NATURE OF THE CASE

1.    This is a class action lawsuit brought by Plaintiff on behalf of himself and a class of individuals who purchased Season Passes or Ikon Passes for the 2019-20 ski season (the "Class"). After Alterra closed its ski resorts early due to the COVID-19 pandemic, Class members were unable to use the remaining value in their passes, and Defendants have refused to refund Plaintiff and Class members for the unusable portion of the passes.

2.    Alterra closed the ski resorts it owns on March 14, 2020, with nearly two months left in the ski season. Similarly, the other resorts included with the Ikon Passes closed around the same time.

3.    Unfortunately for Plaintiff and the Class, Defendants have shifted the financial burden of this extraordinary crisis onto their customers, who, paid hundreds or thousands of dollars for lift tickets and passes to ski or snowboard at Defendants' resorts.

4.    Specifically, Defendants have refused to refund to customers the monies paid for passes they can no longer use; money that they need to provide for themselves and their families during this crisis.

5.    Defendants' conduct breaches their contract with passholders, is unfair, unlawful, and unconscionable, and unjustly enriches Defendants at the expense of their customers.  Plaintiff brings this action in order to secure partial refunds for each and every similarly situated customer that Defendants have wronged by refusing to issue partial refunds for Season Passes and Ikon Passes with unused days, when Alterra closed its resorts starting on March 15, 2020.

## JURISDICTION & VENUE

6.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.    This Court has personal jurisdiction over Defendants because Defendants are headquartered and/or have conducted substantial business in this judicial district, and intentionally and purposefully sold their Season Passes and Ikon Passes into the stream of commerce within this judicial district and throughout the United States.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this district, transact business in this district, and are subject to personal jurisdiction in this district, and because a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

### *Plaintiff*

9.      Plaintiff George T. Farmer ("Plaintiff Farmer") is a citizen of the State of California, and currently resides in San Diego, California.

10.      On or about September 6, 2019, Plaintiff Farmer purchased an Ikon Base Pass for the 2019-20 ski season, which granted him unlimited access to 15 ski areas, and restricted access to all others.  Plaintiff Farmer purchased the Ikon Base Pass for $539.00.  Plaintiff Farmer is a student and received a student discount pass.  Plaintiff Farmer purchased his Ikon Base Pass because of the access it provided to many ski areas.

11.      Plaintiff Farmer used his Ikon Base Pass at Defendants' ski areas during part of the 2019-20 season, and planned to use his Ikon Base Pass after March 15, 2020.  Due to the suspension and closure of Defendants' ski areas, Plaintiff Farmer was not able to use the Ikon Base Pass for the 2019-20 season after March 15, 2020.  Defendants did not provide Plaintiff Farmer a refund of the unused portion of the Ikon Base Pass after Defendants closed all of their ski areas and rendered the Ikon Base Pass unusable.

12.      Had Plaintiff Farmer known that the 2019-20 season was going to end on March 15, 2020, he would not have paid the full purchase price for his Ikon Base Pass.

*Defendants*

13.     Alterra Mountain Company Inc. is a Delaware corporation with its principal place of business located at 3501 Wazee Street, #400, Denver, Colorado 80216.

14.     Alterra owns and operates a range of "recreation, hospitality, real-estate development, food and beverage, and retail businesses." Specifically, Alterra operates 15 different ski areas across North America, including: Big Bear Mountain, June Mountain, Mammoth Mountain, and Squaw Valley Alpine Meadows in California; Steamboat and Winter Park in Colorado; Deer Valley and Solitude in Utah; Stratton and Sugarbush Resort in Vermont; Crystal Mountain in Washington; and Snowshoe Mountain in West Virginia.  Alterra also operates two resorts in Canada, Blue Mountain and Tremblant and CMH Heli-Skiing & Summer Adventures in British Columbia.

15.     Ikon Pass Inc. is a Delaware corporation with its principal place of business located at 3501 Wazee Street, #400, Denver, Colorado 80216.

16.     Ikon Pass Inc. is a wholly-owned subsidiary of Alterra and operates essentially as an alter ego of Alterra.  Alterra sells its Ikon Passes in conjunction with Ikon Pass Inc.

## GENERAL ALLEGATIONS

*Defendants' Ski Passes*

17.     Individuals obtain access to Defendants' ski areas by purchasing either a lift ticket, a season pass or an Ikon Pass.

18.     Generally, lift tickets and season passes may only be used for the ski area associated with the ticket or pass. Lift tickets provide access to the ski area for a specified amount of time, usually one to seven days, depending on the number of days purchased.

19.     Defendants' season passes ("Season Passes") permit passholders unlimited access to a single ski area all season long without any blackout dates.

20.     Alterra and its wholly-owned subsidiary, Ikon Pass Inc., sell the Ikon Pass, Ikon Base Pass, Ikon Base Pass Plus and Ikon Session Pass (collectively, "Ikon Passes") through ikonpass.com.  At all relevant times Ikon Pass Inc. and Alterra operated in conjunction with each other and as a single entity.  When individuals purchased Ikon Passes they formed a contract with Defendants, and the Terms of Use on ikonpass.com link users to alterramtnco.com, a website owned and operated by Alterra.  When Plaintiff and Class members purchased Ikon Passes they entered into an agreement with Alterra and Ikon Pass Inc. such that the relationship between Ikon Pass Inc. and Alterra was indistinguishable.

21.     The website for Ikon Passes for the 2019-2020 season is no longer available, but information and pricing for the passes for the 2020-21 season are substantially similar, if not identical, to those for the 2019-2020 season.

22.     Defendants sell their Ikon Passes at a standard price of $999 for the Ikon Pass, $699 for the Ikon Base Pass, $849 for the Ikon Base Pass Plus and $399 for the Ikon Session Pass 4-day.[1]  Discounted rates are available for individuals renewing Ikon Passes and for students and military members.

23.     The Ikon Pass[2] allows individuals "the most access and no blackout dates at 41 unique destinations worldwide." The Ikon Pass permits unlimited access to 15 different ski areas, and additional limited access to other participating ski areas and discounts on food, retail and lessons at select locations.

---

[1] *Shop Passes*, https://www.ikonpass.com/en/shop-passes (last visited Apr. 23, 2020).
[2] *Ikon Pass Details*, https://www.ikonpass.com/en/shop-passes/ikon-pass-2020-2021 (last visited Apr. 23, 2020).

24.     The Ikon Base Pass[3] is a more affordable pass with a few more limitations.  The Ikon Base Pass still permits passholders unlimited access to 14 of Defendants' ski areas, with blackout dates and restricted access to certain ski areas.

25.     The Ikon Base Pass Plus provides the same features, benefits and access as the Ikon Base Pass as well as five days of access to both Jackson Hole and Aspen Snow Mass.

26.     The Ikon Session Pass[4] provides access to 30 select number of ski areas on four different days.  Passholders can select the specific ski areas and days to use the Ikon Session pass with a few blackout dates during which they cannot use the pass.

27.     Defendants had sold more than 250,000 Ikon Passes by April 2019, which exceeded their pre-season estimates.[5]

28.     Defendants also offer the Ski Pass Preserver at checkout, a form of insurance that Defendants claim "offers the broadest limits."[6] Passholders who purchase Ski Pass Preserver will receive a refund of the cost of the Season Passes and Ikon Passes for covered events.  The covered events are limited to the following situations: the passholder's or a family member's death, sickness or injury; the passholder's primary place of residence or destination is made uninhabitable and remains uninhabitable during the season pass coverage period, by fire, flood, or other natural disaster, vandalism, or burglary of the passholders' principle place of residence; the passholders' transfer of employment of 100 miles or more by the employer the passholder or their spouse are

---

[3] *Ikon Base Pass Details*, https://www.ikonpass.com/en/shop-passes/ikon-base-pass-2020-2021 (last visited Apr. 23, 2020).

[4] *Ikon Session Pass Details*, https://www.ikonpass.com/en/shop-passes/ikon-session-pass-4-day-2020-2021 (last visited Apr. 23, 2020).

[5] *See* Tim Sohn, *It Was a Huge Year for the Ski Pass Locals Love to Hate*,  Bloomberg (April 15, 2019), available at: https://www.bloomberg.com/news/articles/2019-04-15/it-was-a-huge-year-for-ikon-the-ski-pass-locals-love-to-hate.

[6] *Ski Pass Preserver*, https://trippreserver.com/alterra-mountain-company/alterra-ikon-pass/ (last visited Apr. 23, 2020).

employed by, on the effective date, which requires the passholder's principal place of residence to be relocated; revocation of the passholder's previously granted military leave or re-assignment; or the passholder's pregnancy if the pregnancy occurs after the effective date for season pass cancelation.

29.    Plaintiff and Class members purchase Ikon Passes from Defendants to access more than one of Defendants' ski areas and because the Ikon Passes provide access to ski areas for most of the year and the entire ski/snowboard season, which usually lasts around six months.  The ski/snowboard season typically begins in mid-October and can last until June.

30.    Plaintiff and Class members purchase Season Passes and Ikon Passes for the unlimited access the passes provide to Defendants' ski areas.  Plaintiff and the Class benefit from the Season Passes and Ikon Passes because they receive a discount for the increased and usually unlimited access to the ski areas when compared to having to buy individual lift tickets each time they visit a ski area.

31.    The benefits Plaintiff and Class members received from Season Passes and Ikon Passes are effectively the same regardless of the type of Season Passes or Ikon Passes they purchased, such that passholders of Season Passes and Ikon Passes have been treated similarly by Defendants and suffered substantially similar damages and harm from Defendants' actions.

### *COVID-19's Effect on the 2019-2020 Ski Season*

32.    COVID-19 has proven capable of spreading silently through communities, steadily increasing its reach before its existence is detected. On February 29, 2020—the same day the U.S. government issued a "do not travel" warning and prohibited travel between the United States and several countries with COVID-19 outbreaks—the  State of Washington became the first state to declare a state of emergency due to COVID-19. It would not be the last to do so.

7

33.     On March 11, 2020, the World Health Organization reclassified COVID-19 as a worldwide pandemic and, two days later, the President declared a "National Emergency."

34.     On March 11, 2020, in response to the COVID-19 pandemic, Jared Polis, Governor of Colorado, issued Executive Order D 2020 003, which declared COVID-19 a disaster emergency.  On March 14, 2020, Governor Polis issued Executive Order D 2020 004, which directed all downhill ski resorts in the State of Colorado to suspend operations from March 15-22, 2020.  On March 18, 2020, Governor Polis issued Executive Order D 2020 006, which ordered all downhill ski resorts to suspend operations from March 23-April 6, 2020, which was later extended to April 30, 2020.  On March 25, 2020, Governor Polis issued Executive Order D 2020 017, which ordered all residents of Colorado to stay at home.

### Defendants' Actions in Reaction to COVID-19

35.     As COVID-19 began to spread across the United States, reports linked the spread of the disease to ski resorts around the country, especially the resorts in Colorado.[7]

36.     Recognizing the coming wave of closures and stay-at-home orders affecting Alterra's ski areas, on March 14, 2020, Rusty Gregory, chief executive officer for Alterra, issued the Alterra Mountain Company Closure Announcement, suspending operations at all 15 of Defendants' ski areas beginning on March 15, 2020.  Similarly, the other ski areas accessible with Ikon Passes closed around the same time.

37.     In the Closure Announcement, Defendants claimed that it would "provide refunds or credits to those who have hotel and other bookings during this closure period." However,

---

[7] *See e.g.*, Vincent Del Giudice, *Colorado Suspects Virus Cluster in Ski-Resort Region*, Bloomberg (Mar. 16, 2020), https://www.bloomberg.com/news/articles/2020-03-17/colorado-suspects-virus-cluster-in-ski-resort-region-of-state (updated Mar. 17, 2020).

Defendants refused to provide refunds of any kind to individuals who purchased their Season Passes and Ikon Passes.

38.     Since closing all of their resorts, for which passholders were promised unlimited access, Defendants have refused to provide refunds of any portion of the money passholders paid to purchase Season Passes and Ikon Passes for the 2019-2020 ski season.

39.     Because Defendants refused to provide refunds for individuals who purchased any Season Passes or Ikon Passes with unused days, many consumers made claims on their Ski Pass Preserver or pass insurance, seeking partial refunds due to the closure of Defendants' ski areas. However, passholders' claims under the Ski Pass Preserver policies have been denied.[8]

40.     Instead of refunding Plaintiff and Class members for the unused value of the Season Passes and Ikon Passes due to the resort closures, Defendants have only offered an increased discount for Plaintiff and Class members who purchase Ikon Passes for the 2020/2021 ski season. Normally, Defendants offer a $100 discount for pass renewals, but they are now offering a $200 discount for pass renewals.

41.     Defendants' additional $100 discount requires Plaintiff and Class members to pay Defendants even more money and is not a substitute for the partial refund Defendants should be providing Plaintiff and Class members. Such a discount does nothing to ameliorate the financial difficulty imposed upon Plaintiff and Class members by the COVID-19 pandemic.

42.     Any claims by Defendants that they should not have to provide partial refunds to Plaintiff and Class members are unconscionable and unfair.  There are no contract provisions or

---

[8] *See e.g.*, *Travel Insurance, Ski Pass Insurance Will they Pay for COVID-19 Claims?*, MidJersey.News (April 7, 2020) https://midjersey.news/2020/04/07/travel-insurance-ski-pass-insurance-will-they-pay-for-covid-19-claims/ (last visited April 24, 2020).

disclaimers that allows Defendants to keep the monies attributable to the remainder of the 2019-20 season.

43.    The back of the physical Ikon Passes states that "NO REFUNDS/NON-TRANSFERABLE/ILLEGAL TO RESELL/PERSONAL USE ONLY."[9]    This simplistic language does not address the situation at issue here.  While it informs consumers that they may not change their minds, or sell or share their passes, it does not inform them that Defendants will not provide refunds when Alterra closes its ski areas and passholders are wholly unable to use their passes.

44.    Nothing in Defendants' Terms of Use for the Ikon Passes and Season Passes establishes that Defendants do not need to refund Plaintiff and Class members for preventing the promised unlimited access to their ski areas.[10]

45.    The Terms of Use only explain, under the "Passholder Transactions and Force Majeure" heading, that "[w]hile the products and services may have certain access rights, this does not guarantee access will be available to [passholders] at all times where circumstances occur that are beyond [Defendants'] control or that require us to limit access to our resorts for safety or other reasons."

46.    Nothing in this provision or the Terms of Use explains that passholders will not be provided a refund or partial refund in the event of a complete closure of Defendants' ski areas for extended periods.

47.    The Terms of Use for all of Defendants' websites and passes provide that the use of the website and their passes is governed by the laws of the State of Colorado, and any legal proceedings against Defendants shall be commenced in state or federal court in Denver, Colorado.

---

[9] *See* Plaintiff Farmer's Ikon Base Pass, attached as **Exhibit A**.
[10] *See* Defendants' Terms of Use, attached as **Exhibit B**.

48.     Defendants' Ikon Pass website contains an Ikon Pass Payment Plan and Cancellation Policy, but it only applies to passes for the 2020-21 season that individuals purchased with a payment plan. Nothing in the Payment Plan and Cancellation Policy explains that Defendants need not refund passholders' monies for passes for the curtailed 2019-20 season.[11]

49.     Defendants have newly instituted an "Adventure Assurance" program. The program allows holders of Ikon Passes for the 2020-21 season to defer the passes until the 2021-22 season, if they elect to do so between September 10, 2020 and December 10, 2020.[12] The Adventure Assurance program available to future purchasers highlights the inequity of Defendants' failure to offer refunds to Plaintiff and the Class for current Season Passes and Ikon Passes, and completely fails to compensate Plaintiff and the Class for the losses they sustained because of Defendants refusal to offer refunds for the remainder of the 2019-20 season.

50.     No Season Pass or Ikon Pass passholder is bound by Defendants' attempts to limit their liability for closing their ski areas. Even if Defendants' limitation of liability applied by its terms—which it arguably does not—Defendants cannot disclaim liability for loss or damage by closing their ski areas and preventing consumers from being able to use the Season Passes or Ikon Passes, without any compensation for the unused portion of the passes. Any attempt by Defendants to limit or disclaim liability for preventing passholders from using the Season Passes or Ikon Passes, while retaining the fees that passholders paid to purchase the Season Passes or Ikon Passes, is unconscionable and unenforceable, and unjustly enriches Defendants.

## CLASS ALLEGATIONS

51.     Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

---

[11] *See* Payment Plan and Cancellation Policy, attached as **Exhibit C**.
[12] *Community Gratitude*, https://www.ikonpass.com/en/community (last visited April 24, 2020).

> All persons in the United States who purchased a 2019-20 Season Pass to
> any of Defendants' resorts, 2019-20 Ikon Pass, 2019-20 Ikon Base Pass,
> 2019-20 Ikon Base Pass Plus, or 2019-20 Ikon Session Pass that had unused
> days after March 15, 2020.

52.     Excluded from the Class(es) are: (a) Defendant; (b) Defendants' affiliates, agents,

employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and

any member of the judge's immediate family.

53.     **Numerosity**: Upon information and belief, the Class is so numerous that joinder of

all members is impracticable. While the exact number and identity of individual members of the

Class are unknown at this time, such information being in the sole possession of Defendants and

obtainable by Plaintiff only through the discovery process. Plaintiff believes, and on that basis

alleges, that the Class consists of hundreds of thousands of people. The number of Class members

can be determined based on Defendants' records.

54.     **Commonality**: Common questions of law and fact exist as to all members of each

Class. These questions predominate over questions affecting individual Class members. These

common legal and factual questions include, but are not limited to:

    a.  Whether Defendants are required to provide partial refunds to Plaintiff and Class
        members who purchased Season Passes or Ikon Passes;

    b.  Whether Defendants breached their contracts with Plaintiff and Class members;

    c.  Whether Defendants were unjustly enriched by their conduct;

    d.  Whether Defendants breached their implied and express warranties; and

    e.  Whether Defendants violated the Colorado Consumer Fraud Act.

55.     **Typicality**: Plaintiff has the same interest in this matter as all Class members, and

Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members.

Plaintiff's and Class members' claims all arise out Defendants' uniform conduct, statements, and unlawful, unfair, and deceptive acts and practices.

56.    **Adequacy**: Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

57.    **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals.  By contrast, the Class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## BREACH OF CONTRACT

58.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

59.    Plaintiff and the Class entered into a contract with Defendants when purchasing Season Passes or Ikon Passes.

60.     The contract was offered by Defendants and was formed at the time Plaintiff and the Class accepted it by purchasing their Season Passes or Ikon Passes.

61.     Plaintiff and the Class performed their obligations under the contract by providing payment in consideration for the Season Passes or Ikon Passes.

62.     Defendants breached their contracts with Plaintiff and the Class by retaining the consideration received by Plaintiff and the Class while closing their ski resorts, making the Season Passes and Ikon Passes useless for a substantial portion of the ski season.

63.     Defendants' decision to retain the fees paid by Plaintiff and the Class without providing them with what was promised deprived Plaintiff and the Class the benefit of their bargains.

64.     Due to the closure of Defendants' ski areas for a substantial portion of the 2019-20 season, Defendants are unable to perform the remainder of the contract.  Defendants' closure of all of their ski areas for the remainder of the 2019-20 ski season, while a substantial portion of the ski season remained, renders Defendants' representations that it will not provide refunds for Season Passes or Ikon Passes illusory and void.

65.     As a direct and proximate result of Defendants' breach, Plaintiff and the Class have suffered monetary damages.

66.     Plaintiff and the Class seek the return of amounts paid to Defendants for their Season Passes or Ikon Passes, as well as attorneys' fees, costs and interest.

## COUNT II
## UNJUST ENRICHMENT
### (Plead in the alternative to Count I for Breach of Contract)

67.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

68.    Plaintiff and the Class conferred a direct benefit on Defendants by purchasing Season Passes or Ikon Passes.

69.    Defendants knowingly and willingly accepted and enjoyed the benefits conferred on them by Plaintiff and the Class.

70.    Defendants' retention of these benefits is unjust and inequitable under the circumstances.

71.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class are entitled to recover the amount each paid to Defendants for their Season Passes or Ikon Passes, as well as attorneys' fees, costs and interest.

<u>**COUNT III**</u>
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

72.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

73.    Every contract in Colorado contains an implied covenant of good faith and fair dealing. The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

74.    Defendants breached the covenant of good faith and fair dealing by failing to partially refund Plaintiff and the Class for the purchase price of their Season Passes or Ikon Passes after Defendants terminated access to their ski areas.

75.    Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff and the Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## COUNT IV
## CONVERSION

76.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

77.     Plaintiff and the Class purchased Season Passes or Ikon Passes that granted them the right to services that were promised in exchange for the purchase price of the passes.

78.     Defendants intentionally interfered with Plaintiff' and the Class' rights granted through those passes when Defendants closed all of their ski areas and retained the purchase price of the passes.

79.     Defendants exercised control over Plaintiff's and Class members' property by closing its ski areas and refusing to issue partial refunds for the unusable portion of the 2019-20 Season Passes and Ikon Passes, and the rights granted by those passes.

80.     Defendants' closure of their ski areas and refusal to refund the unusable portion of the 2019-20 Season Passes or Ikon Passes to Plaintiff and Class members is unauthorized.

81.     Plaintiff and Class members have, through the filing of this lawsuit or otherwise communicating with Defendant, demanded that Defendants issue refunds for the unusable portion of the 2019-20 Season Passes or Ikon Passes.

82.     Defendants have uniformly and consistently refused to issue refunds for the unusable portion of the 2019-20 Season Passes or Ikon Passes.

83.     Plaintiff and the Class seek a partial return of the price paid to Defendants for their Season Passes or Ikon Passes.

## COUNT V
## BREACH OF WARRANTY

84.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

85.     Defendants created an express warranty through their advertising statements that the Season Passes and Ikon Passes would provide "unlimited access" to their resorts through the 2019-2020 season.

86.     This warranty became part of the basis of the bargain between Plaintiff and the Class and Defendants. Plaintiff and the Class relied on this warranty in deciding to purchase a pass from Defendants.

87.     Defendants breached this warranty by failing to provide unlimited access to their ski areas throughout the 2020 ski season and by failing to issue partial refunds to Plaintiff and the Class after shutting down access to their facilities.

88.     Plaintiff and the Class would not have purchased the Season Passes or Ikon Passes, or would have paid substantially less, had Defendants disclosed that it would not honor the warranty and not refund Plaintiff and Class members any portion of the purchase price for the passes.

89.     Plaintiff and the Class performed their obligations under the warranty, including paying in full for their passes.

90.     Plaintiff and the Class were injured as a direct and proximate result of Defendants' breach of warranty.

## COUNT VI
## VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT[13]

91.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

92.    Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes "advertis[ing] goods, services, or property with intent not to sell them as advertised." Colo. Rev. Stat. § 6-1-105(1)(g), (i).

93.    Defendants both are a "person" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

94.    In the course of Defendants' business, it advertised that the purchasers of their Season Passes or Ikon Passes would have unlimited access to skiing and snowboarding until end of the 2019-20 season, which typically lasts until May or June. Defendants knew, however, that if they closed all of their resorts before the end of June 2020 that they would retain 100% of the revenue generated from sales of the passes.

95.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

96.    Defendants' actions proximately caused injuries to Plaintiff and Class members.

97.    Plaintiff and Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing their passes, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Defendants with respect to their ability to access Defendants' ski areas without restriction. Had Plaintiff and the other Class members known this, they would not have purchased

---

[13] Plaintiff does not seek certification under Federal Rule of Civil Procedure 23(b)(3) for Defendants' violation of the CCPA, instead Plaintiff seeks certification under Rule 23(b)(2)—seeking declaratory relief—and Rule 23(c)(4) regarding the issue whether Defendants conduct alleged herein violates the CCPA.

their passes and/or paid as much for them. Accordingly, Plaintiff and the other Class members overpaid for their passes and did not receive the benefit of their bargain.

98.    Plaintiff and the Class Members injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. Appoint Plaintiff as the representative of the Class and his counsel as Class Counsel;

C. Award actual damages and equitable monetary relief to Plaintiff and the Class and/or order Defendants to return to Plaintiff and the Class the amount each paid to Defendants;

D. Award pre-judgment and post-judgment interest on such monetary relief;

E. Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to issue refunds to any member of the Class who requests a refund;

F. Award reasonable attorneys' fees and costs; and

G. Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff, on behalf of himself and the Class, demands a trial by jury on all issues so triable.

Dated: April 27, 2020

Respectfully submitted,

*/s/ Joseph G. Sauder*
Joseph G. Sauder
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (888) 711-9975
jgs@sstriallawyers.com

Nyran Rose Rasche
Nickolas J. Hagman
John D. Scheflow
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Telephone: 312-782-4880
Facsimile: 312-782-4485
nrasche@caffertyclobes.com
nhagman@caffertyclobes.com
jscheflow@caffertyclobes.com

Bryan L. Clobes
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
205 N. Monroe St.
Media, Pennsylvania 19063
Telephone: 215-864-2800
bclobes@caffertyclobes.com

***Attorneys for the Plaintiff and the Putative Class***

# EXHIBIT A

1614 7133 5350 0643 1086-6

# WARNING

**Under state law, a skier assumes the risk of any injury to person or property resulting from any of the inherent dangers and risks of skiing and may not recover from any ski area operator for any injury resulting from any of the inherent dangers and risks of skiing, including: Changing weather conditions; existing and changing snow conditions; bare spots; rocks; stumps; trees; collisions with natural objects, man-made objects, or other skiers; variations in terrain; and the failure of skiers to ski within their own abilities. Under Wyoming law, a skier assumes the inherent risks of skiing and is legally responsible for any and all damage, injury or death to person or property that results from the inherent risks of skiing.**

This pass remains the property of Ikon Pass, Inc. ("Ikon"). Use is subject to the Release of Liability, Waiver of Claims, Warning, Assumption of Risk and Indemnity Agreement ("Agreement") entered into by Passholder. Passholder agrees to comply with all applicable rules, including codes of conduct, of each Resort (as defined in Agreement) and all applicable laws and regulations. Passholder accepts full responsibility for all risks associated with the Activities (as defined in the Agreement) offered through this pass and hereby releases Ikon, Resorts and each of their respective subsidiaries and affiliates of all legal liability for same. In the event of a claim, Passholder agrees that the jurisdiction in which the alleged incident occurred shall be the appropriate forum and that state, provincial or federal laws of that jurisdiction will apply in accordance with the Agreement.

Cette passe demeure la propriété d'Ikon Pass, Inc. ("Ikon"). L'utilisation est assujettie à l'Entente de Dégagement de responsabilité, Renonciation aux réclamations, Mise en Garde, Acceptation des risques et Accord d'indemnisation ("L'Accord") conclue par le détenteur. Le détenteur accepte de respecter les lois et règles, incluant les codes de conduites, applicables à chaque Centre de villégiature (telle que définie dans l'Accord). Le détenteur accepte tous les risques associés aux Activités (telles que définies à l'Accord) offertes avec cette passe. En cas de réclamation, le détenteur accepte que la juridiction dans laquelle l'accident allégué a eu lieu sera le forum approprié et que les lois étatiques, provinciales ou fédérales de cette juridiction s'appliqueront conformément à l'Accord.

**NO REFUNDS/NON-TRANSFERABLE/ILLEGAL TO RESELL/PERSONAL USE ONLY**

**AUCUN REMBOURSEMENT/NON-TRANSFÉRABLE/REVENTE ILLÉGALE/UTILISATION PERSONNELLE SEULEMENT**

SKIDATA EX19248-30318US

# EXHIBIT B



TERMS OF USE

# TERMS OF USE

**Version Date: February 2020**

Welcome to Alterra Mountain Company! The content on this website may be used to promote, sell, and market the products and services of Alterra Mountain Company and/or its subsidiaries. By accessing or using this website in any manner, you agree to be bound by the terms, conditions and notices set forth below ("Agreement"). Please read this Agreement carefully. If you do not accept all of these terms and conditions, please do not use this website. Be sure to return to this page periodically to review the most current version of the Agreement. We reserve the right at any time, at our sole discretion, to change or otherwise modify the Agreement without prior notice, and your continued

access or use of this website signifies your acceptance of the updated or modified Agreement.

This Agreement uses certain terms defined as follows: the terms "we", "us", "our" and "Alterra Mtn. Co." refer to Alterra Mountain Company and/or its subsidiaries. The term "you" or "Users" refers to the user visiting and/or purchasing from the website.

# USE OF THE WEBSITE

As a condition of your use of this website, you warrant that (i) if you are conducting or participating in a financial transaction, you have the legal authority and authorized capacity to complete the transaction and you possess the legal authority to create a binding legal obligation; (ii) you will use this website in accordance with this Agreement; (iii) you will only use this website to seek information about Alterra Mtn. Co. goods and services and to make legitimate reservations or purchases for you or for another person(s) for whom you are legally authorized to act and only to the extent permitted by the terms and conditions relating to such reservation or purchase; (iv) you will inform such other person(s) about the terms and conditions that apply to the reservations or purchases that you have made on their behalf, including all rules and restrictions applicable thereto; and (v) all information supplied by you on this website is true, accurate, current, and complete. We retain the right to deny anyone access to this website and the goods or services we offer, at any time and for any lawful reason, including for violation of this Agreement.

# CERTAIN WEBSITE TRANSACTIONS

We reserve the right to revoke any offer or to refuse any order that you place with Alterra Mtn. Co. through this website. We may, in our sole discretion, limit or cancel quantities purchased per person, per household or per transaction. These restrictions may include orders placed by or under the same customer account, the same credit card, and/or

orders that use the same billing and/or shipping address. In the event we make a change to or cancel an order, we will attempt to notify you by contacting the e-mail and/or billing address/phone number provided at the time the order was made. We reserve the right to limit or prohibit orders that, in our sole judgment, appear to be placed by dealers, resellers or distributors. This Agreement is subject to any terms and conditions that you accept in connection with completion of a transaction on our website and in the event of a conflict between this Agreement and any such terms and conditions, the terms and conditions will govern for purposes of that transaction.

# WEBSITE CONTENT/ OWNERSHIP

Unless otherwise noted, the website and all materials on the website, including but not limited to visual interfaces, interactive features, graphics, design, compilation, computer code, products, software, aggregate user review ratings, and all other elements and components of the website including text, images, illustrations, designs, icons, photographs, video clips and other materials, and the copyrights, trademarks, trade dress or other intellectual property in such materials (collectively, the "Alterra Mtn. Co. Content") are owned or used under license by Alterra Mtn. Co.

The website and the Alterra Mtn. Co. Content are intended solely for personal, non-commercial use. You may download or copy the contents and other downloadable materials displayed on the website for your personal use only. No right, title, or interest in any downloaded content is transferred to you as a result of any such downloading or copying. You may not reproduce (except as noted above), publish, transmit, distribute, display, modify, create derivative works from, copy or create similar trade dress, sell or exploit in any way any of the website or Alterra Mtn. Co. Content.

# PASSHOLDER TRANSACTIONS AND FORCE MAJEURE

The website offers several products and services for purchase by you. While the products and services may have certain access rights, this does not guarantee access will be available to you at all times where circumstances occur that are beyond our control or that require us to limit access to our resorts for safety or other reasons.

Our resorts and our pass partners' resorts are located in mountain regions and subject to severe weather events beyond our control or prevention that may impair your ability to access the resorts. We are not liable for any failure or impairment that may prevent your ability to access our resorts due to severe weather events, including snow, ice, high-winds, blizzards, and floods, and closed roads and mountain passes, unplowed road conditions, cancelled or delayed flights.

Additionally, our resorts may experience severe weather events or mechanical problems with their equipment that prevent the resort from opening all or a portion of its skiable/rideable terrain. Closed terrain is not accessible to skiers or riders. Please respect closed terrain as it is closed for your safety and the safety of our resort employees.

Our resorts have limited parking available. We are not responsible for any inability to access our resorts due to lack of parking. Please plan ahead and carpool whenever possible. Take note that some resorts charge a parking fee.

All of our resorts have limited capacity and we reserve the right to refuse or deny entry to our resorts at our sole discretion regardless of your passholder status.

# NOTICE AND PROCEDURE FOR MAKING CLAIMS OF COPYRIGHT INFRINGEMENT

Pursuant to Title 17, United States Code, §512(c)(2), in the event that you believe in good faith that your copyrighted work has been reproduced and is accessible on the website in a manner that constitutes copyright infringement, please provide written notice of the

suspected infringement Alterra Mtn. Co.'s legal department. Please include the following information in the written notice:

- Identify your copyrighted work on which infringement is claimed and its location on the website;

- Include a statement that the content of the written notice is accurate and, under penalty of perjury, you are, or are authorized to act on behalf of, the owner of the copyright for which you claim infringement;

- A signature (electronic or physical) of you or an authorized signatory on behalf of the copyright owner asserting to the claim of copyright infringement and the submission of the notice.

Notices of infringement, including this required information, should include "DMCA Notice of Copyright Infringement" in the subject line and be sent to:

Alterra Mtn. Co. Attention: Chief Legal Officer Email: legal@alterramtnco.com

Alterra Mtn. Co. reserves the right to remove any content or material from the website that infringes on copyright under the laws of the United States or Canada provided that the written notice of infringement includes the required information set forth in Title 17, United States Code, §512(c)(2). Under United States law, written notices of infringement under Title 17, United States Code, §512(c)(2) that are not submitted in good faith may carry significant penalties.

# SUPPLIER RULES AND RESTRICTIONS

Additional terms and conditions may also apply to (i) your reservation (if any); and (ii) your purchase of products or services (if any). Please read any applicable separate terms and conditions carefully as they may include restrictions or limitations on rental age, resort fees/charges, limitations of liability, and information regarding cancellation/refund policies, credit card billing information and much more. You agree to abide by the terms and conditions of purchase imposed by any supplier with whom you elect to deal, including, but not limited to, payment of all amounts when due and compliance with the supplier's rules and restrictions regarding availability and use of fares, products, or services. In the event of a conflict between this Agreement and any separate terms and conditions, the separate terms and conditions shall prevail. You acknowledge that Alterra Mtn. Co. and/or some third-party providers offering certain services and/or activities may require you to sign a release of liability waiver prior to participating in the service and/or activity they offer. You understand that any violation of any such supplier's rules and restrictions may result in cancellation of your reservation(s), in your being denied access to or use of the applicable product or services, in your forfeiting any monies paid for such reservation(s) or purchase(s), and/or in our debiting your account for any costs we incur as a result of such violation.

# USER COMMENTS, FEEDBACK, AND OTHER SUBMISSIONS

All comments, feedback, suggestions, ideas, videos, pictures, music, blogs, bulletin boards, and other submissions disclosed, submitted or offered to Alterra Mtn. Co., whether online, by email, by postal mail, or otherwise ("Comments") shall be and remain Alterra Mtn. Co.'s property. Your disclosure, submission or offer of any Comments shall constitute an assignment to Alterra Mtn. Co. of all worldwide rights, titles and interests in all copyrights and other intellectual properties in the Comments, and Alterra Mtn. Co. shall not be limited in any way in its use, commercial or otherwise, of any Comments. Alterra Mtn. Co. is and shall be under no obligation to: (1) maintain any Comments in confidence; (2) pay compensation for any Comments; or (3) respond to any Comments. Alterra Mtn.

Co. has the right but not the obligation to monitor and edit or remove any Comments from the website.

You agree that your Comments will not violate any right of any third party, including copyright, trademark, privacy or other personal or proprietary right. You further agree that your Comments will not contain libelous or otherwise unlawful, abusive or obscene material, or contain any computer virus or other malware that could in any way affect the operation of the website. You may not use a false e-mail address, pretend to be someone other than yourself, or otherwise mislead Alterra Mtn. Co. or third parties as to the origin of any Comments. You are solely responsible for any Comments you make. Alterra Mtn. Co. takes no responsibility and assumes no liability for any Comments posted by you or any third party.

# PRODUCT INFORMATION

The prices displayed on the website are quoted in Canadian or U.S. Dollars, **as indicated.**

Certain products may be offered exclusively online through the website. These products may have limited quantities and are subject to return or exchange only through the website according to the applicable return policy.

# WARRANTIES, DISCLAIMERS, AND LIMITATIONS OF LIABILITY

- THE WEBSITE AND ALL WEBSITE CONTENT, INCLUDING ALTERRA MTN. CO. CONTENT, IS MADE AVAILABLE TO YOU ON AN "AS IS" BASIS. ALTERRA MTN. CO. MAKES NO WARRANTIES, REPRESENTATIONS, OR CONDITIONS OF ANY KIND, EXPRESS, STATUTORY OR IMPLIED AS TO (1) THE OPERATION AND FUNCTIONALITY OF THE WEBSITE, (2) THE ACCURACY, INTEGRITY,

COMPLETENESS, QUALITY, LEGALITY, USEFULNESS, SAFETY, AND IP RIGHTS OF ANY OF THE WEBSITE CONTENT, AND (3) THE PRODUCTS AND SERVICES ASSOCIATED WITH THE WEBSITE OR WEBSITE CONTENT, INCLUDING BUT NOT LIMITED TO THE PRODUCTS AND SERVICES SOLD BY BUSINESSES LISTED ON THE WEBSITE. ALTERA MTN. CO. FURTHER DISCLAIMS ALL WARRANTIES, EXPRESS, STATUTORY, OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, MERCHANTABLE QUALITY, DURABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. NO ADVICE OR INFORMATION, WHETHER ORAL OR WRITTEN, THAT YOU OBTAIN FROM ALTERRA MTN. CO. OR THE WEBSITE SHALL CREATE ANY WARRANTY, REPRESENTATION, OR CONDITION NOT EXPRESSLY STATED HEREIN.

- IN NO EVENT WILL ALTERRA MTN. CO. BE LIABLE FOR ANY: (A) INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, EXEMPLARY, RELIANCE, OR CONSEQUENTIAL DAMAGES; (B) LOSS OF PROFITS; (C) BUSINESS INTERRUPTION; (D) LOSS OF OR DAMAGE TO REPUTATION OF ALTERRA MTN. CO.; (E) LOSS OF INFORMATION OR DATA; OR (F) DIRECT DAMAGES IN EXCESS OF $500, REGARDLESS OF THE FORM OF ACTION; (WHETHER SUCH LIABILITY ARISES DUE TO NEGLIGENCE, BREACH OF CONTRACT, MISREPRESENTATION OR ANY OTHER REASON) WITH RESPECT TO OR ARISING FROM YOUR USE OF THE WEBSITE, RELIANCE UPON THE CONTENT OF THE WEBSITE OR ANY RESERVATIONS OR PRODUCTS OR SERVICES PURCHASED THROUGH THE WEBSITE.

## ERRORS, INACCURACIES, AND OMISSIONS

Occasionally there may be information on our website that contains typographical errors,

inaccuracies, or omissions that may relate to product descriptions, pricing, promotions, offers, and availability. We reserve the right to correct any errors, inaccuracies or omissions and to change or update information or cancel orders or reservations, if any information on the website is inaccurate at any time without prior notice (including after you have submitted your order or reservation).

# LINKS TO OTHER WEB SITES AND SERVICES

Links to third party websites on this website are provided solely as a convenience to you. If you use these links, you will leave this website. Alterra Mtn. Co. has not reviewed all of these third party websites and does not control and is not responsible for any of these websites or their content. Thus, Alterra Mtn. Co. does not endorse or make any representations about them, or any information, or other products or materials found there, or any results that may be obtained from using them. If you decide to access any of the third party websites linked to this website, you do this entirely at your own risk.

# HARASSMENT

You are prohibited to use Alterra Mtn. Co's website in any manner so as to harass, threaten, embarrass, abuse or cause distress, unwanted attention, or discomfort to any person or entity. This prohibition extends to any Comments or conduct that Alterra Mtn. Co. may deem, in its sole opinion to be vulgar, hateful or racially or ethnically offensive, or otherwise objectionable. For greater certainty, any message or conduct that is repeated after warning is given notifying that such conduct is unwelcome, constitutes harassment.

# FALSE ADVERTISING PROHIBITED

You are prohibited to use Alterra Mtn. Co.'s website to post any advertising promotions, and other content that contains false, misleading, defamatory, or deceptive statements or claims.

# GIFT CARD TERMS AND CONDITIONS

All prepaid Gift Card must be activated for use. Prepaid Gift Cards are redeemable for goods and/or services at participating locations at applicable resorts. Prepaid Gift Cards are not redeemable for cash except as required by law. Lost or stolen cards will not be replaced without the card number and the original receipt. You agree that we may provide notices, disclosures and amendments to these terms and conditions and other information relating to prepaid Gift Cards by electronic means, including posting such materials online. Prepaid Gift cards are issued by, and represents a legal obligation solely of, Intrawest Mountain Adventures, Inc. Our resorts and resort operating entities are not responsible for our Prepaid Gift Cards and you hereby knowingly release Alterra Mtn. Co., our resorts and resort operating entities from any and all liability or claims of any nature whatsoever arising in connection with this card. Your purchase, use, or acceptance of this card constitutes acceptance of these terms and conditions.

# NETWORK SECURITY

Alterra Mtn. Co. assumes no liability or responsibility for the security of User's facilities or networks or for unauthorized access to such networks or facilities. In all cases, Users are responsible for determining and establishing secure network access configurations. Alterra Mtn. Co., its partners, affiliates and suppliers and each of their respective directors, officers, employees, consultants, agents, and suppliers shall not be liable for any inability, failure, or mistake related to any security breach or identification of such breach or any loss that results from the transmission of confidential or sensitive information over the Internet.

# PRIVACY

The collection, use, and disclosure of your personal information from your use of the website is done in accordance with Alterra Mtn. Co.'s Privacy Policy ("Policy"), which can

be found at https://www.alterramtnco.com/privacy-policy. Alterra Mtn. Co. encourages you to read this Policy and to visit this link often as the Policy is subject to change without notice to you.

# INDEMNIFICATION

Except to the extent prohibited under the applicable law, you agree to defend, indemnify and hold Alterra Mtn. Co. and its affiliated entities and any other party involved in the content or creation of this website, and each of their directors, officers, employees, agents, shareholders, licensors and representatives, harmless from and against any and all claims, damages, costs and expenses, including attorneys' fees, arising from or related to your use of the website or submission of Comments, or your breach of any representation, warranty, or other provision of the Agreement.

# GOVERNING LAW & VENUE

This Agreement shall be construed in accordance with the laws of the State of Colorado, without regard to any conflict of law provisions. Any dispute arising under this Agreement shall be resolved exclusively by the jurisdiction of the state courts of Colorado located in Denver County, Colorado and by the federal courts, as applicable, located in Denver County, Colorado, whichever shall apply. For the avoidance of doubt, the governing law of a release of liability waiver shall prevail over this Agreement. You hereby waive any jurisdictional, venue or inconvenient forum objections to such courts.

# TERMINATION

This Agreement is effective unless and until terminated by either you or Alterra Mtn. Co. You may terminate this Agreement at any time by ceasing to use or interact with our website however, this Agreement shall continue to apply to any prior transactions or interactions with this website. Alterra Mtn. Co. also may terminate this Agreement at any

time without notice, and accordingly may deny you access to the website. The obligations and liabilities of the parties incurred prior to the termination date shall survive the termination of this Agreement for all purposes.

# MISCELLANEOUS

- This Agreement, together with any other terms and conditions you accept in connection with using our website, contain the entire agreement between you and Alterra Mtn. Co. regarding the use of the website and supersede any prior agreement between you and Alterra Mtn. Co. on such subject matter. The parties acknowledge that no reliance is placed on any representation made but not expressly contained in this Agreement.

- The failure of Alterra Mtn. Co. to exercise or enforce any right or provision of this Agreement shall not constitute a waiver of such right or provision. The failure of either party to exercise in any respect any right provided for herein shall not be deemed a waiver of any further rights hereunder.

- If any provision of this Agreement is found to be unenforceable or invalid, that provision shall be limited or eliminated to the minimum extent necessary so that the remainder of this Agreement shall otherwise remain in full force and effect and enforceable.

- The section titles in this Agreement are for convenience only and have no legal or contractual effect.

Terms of Use | Alterra Mountain Company

© 2020 Alterra Mountain Company, 3501 Wazee St #400, Denver, CO 80216, (303) 749-8200

# EXHIBIT C

Payment Plan & Cancellation Policy | Ikon Pass

# IKON PASS PAYMENT PLAN & CANCELLATION POLICY

ALL 20/21 IKON PASS, IKON BASE PASS, AND IKON BASE PLUS PASS PURCHASES PAID-IN-FULL ARE NON-REFUNDABLE BUT MAY QUALIFY FOR THE ADVENTURE ASSURANCE PROGRAM. CLICK HERE FOR MORE INFORMATION.

If you enroll in the Ikon Pass Payment Plan program, you agree and authorize Ikon Pass, Inc. to charge your credit card in connection with the purchase of your Ikon Pass, Ikon Base Pass, and/or Ikon Base Plus Pass. You will be charged a non-refundable $199 deposit and a pass insurance premium (if applicable) which are due at the time of enrollment. The balance will be charged in four (4) monthly payments. The payments will be debited on or after the 1st day of each month. Your final payment amount will include the outstanding balance owed on your purchase which may vary slightly from your prior three (3) payments to reflect the full purchase price of the product.

The Ikon Pass Payment Plan program is offered on USD purchases of Ikon Pass pass products purchased from March through July 2020. Your monthly payment schedule will depend upon the month and date of your purchase transaction. Please see the following chart for more information.

| PURCHASE DATE | 1ST MONTHLY PAYMENT DATE | 2ND MONTHLY PAYMENT DATE | 3RD MONTHLY PAYMENT DATE | 4TH MONTHLY PAYMENT DATE |
|---|---|---|---|---|
| **Mar. – Apr. 30** | On or after Jun. 1 | On or after Jul. 1 | On or after Aug. 1 | On or after Sept. 1 |
| **May 1 – 27** | On or after Jul. 1 | On or after Aug. 1 | On or after Sept. 1 | On or after Oct. 1 |

| May 28 – Jun. 30 | On or after Aug. 1 | On or after Sept. 1 | On or after Oct. 1 | On or after Nov. 1 |
| Jul. 1 – 31 | On or after Sept. 1 | On or after Oct. 1 | On or after Nov.1 | On or after Dec. 1 |

It is your responsibility to update your account with any changes to your credit card information. Failure to report changes to your credit card information may result in suspension and/or cancellation of this purchase agreement, or forfeiture of funds paid in accordance with this purchase agreement. You may update your credit card information by clicking https://account.ikonpass.com/en/login or by contacting Guest Services at 1-888-365-IKON or 303-729-3174. Do not email us your credit card information.

You may cancel this payment plan purchase agreement at any time prior to the date on which your last monthly payment is due by sending an email to cancellation@ikonpass.com ("Cancellation Notice"). The following information must be included in your Cancellation Notice:

- Order number
- First name, last name, and date of birth associated with pass is being cancelled
- Phone number (in case we need to reach you).

If you cancel this purchase agreement by providing Cancellation Notice prior to the date on which your last monthly payment is due, you will be reimbursed for all payment amounts paid and received by us as of the cancellation date less the $199 non-refundable deposit, and a $99 cancellation administration fee, and any pass insurance premium (if applicable).

If you do not complete all required payments under this purchase agreement and/or you do not provide Cancellation Notice prior to the date on which your last monthly payment is due, then you are deemed to have forfeited all amounts paid to us as of that date.

Any cancellation right offered under this purchase agreement is valid for and applies only to unused Ikon Pass products. Please allow two weeks to process a Cancellation Notice with your credit card company. All pass purchases paid in full are considered non-refundable. It is your responsibility to notify us of any changes

to your credit card information. Payment plan purchase option is offered on Ikon Pass, Ikon Base Pass, and Ikon Base Plus Pass products only.

## STAY IN THE KNOW

Keep up with the latest news, deals and pass perks.

**SIGN ME UP**

You may unsubscribe at any time.